FILED

2024 Mar-06  PM 02:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:23-cv-00381-SGC |
| | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Michael Hayes, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") on remand from this district court.  (Doc. 1).[2]  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.    Procedural History

Hayes alleged in his application for DIB filed on February 21, 2017, that he became disabled on April 27, 2011.  (Tr. at 581).  After his claim was denied, Hayes

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 10).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear as: Doc. __ at __.  Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear as: Tr. at __.

requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*). An ALJ conducted a hearing and then denied Hayes's claim. (*Id.* at 581-591). Hayes requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied review. (*Id.* at 596-98). Hayes then commenced an action in this district court. *See Hayes v. Saul*, Case No. 20-cv-00446-RDP (N.D. Ala. filed Mar. 31, 2020). District Judge R. David Proctor reversed the ALJ's decision and remanded the case for further proceedings after concluding the ALJ did not apply the Eleventh Circuit "pain standard" correctly – that is, that the ALJ failed to articulate explicit and adequate reasons for discrediting Hayes's testimony regarding his pain. (Tr. at 604-16). The Appeals Council vacated the ALJ's decision and directed her to conduct further proceedings consistent with Judge Proctor's remand order. (*Id.* at 619). The ALJ conducted a new hearing and then, again, denied Hayes's claim. (*Id.* at 522-34). The record lacks evidence Hayes requested review of the ALJ's second decision by the Appeals Council, but the Commissioner does not protest Hayes's failure to exhaust his administrative remedies. Therefore, the ALJ's second decision is properly before the court for review under 42 U.S.C § 405(g).[3]

---

[3] As a general rule, a claimant must exhaust his administrative remedies before seeking review of the denial of his application for disability benefits. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260-61 (11th Cir. 2007). This includes seeking review of an ALJ's decision denying benefits by the Appeals Council. *Id.* at 1261 (citing *Sims v. Apfel*, 530 U.S. 103, 107 (2000)). However, the Commissioner may waive the exhaustion requirement. *Crayton v. Callahan*, 120 F.3d 1217, 1220-21 (11th Cir. 1997). Waiver occurs, for example, when the Commissioner fails

## II.     Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).  An applicant for DIB must demonstrate disability between his alleged initial onset date and his date last insured.  *Mason v. Comm'r of Soc. Sec. Admin.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.   20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ determined

---

to raise exhaustion as a bar to a district court's review of a claim.  *Id.* (citing *Weinberger v. Salfi*, 422 U.S. 749, 766-67 (1975)); *see also Arnold v. Comm'r of Soc. Sec. Admin.*, 724 F. App'x 772, 783 n.7 (11th Cir. 2018) (holding Commissioner waived administrative exhaustion requirement by failing to raise the issue in the district court or before the appellate court) (citing *Crayton*).

Hayes met the SSA's insured status requirements through December 31, 2015, and did not engage in substantial activity between April 27, 2011 (the alleged onset date of his disability) and December 31, 2015 (his date last insured). (Tr. at 524-25). The court will refer to the period between April 27, 2011, and December 31, 2015, as the "relevant period."

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined that during the relevant period Hayes had the following severe impairments: "residuals of compression fracture of lumbar spine" and chronic pain syndrome. (Tr. at 525).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the

4

Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined that during the relevant period Hayes did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (Tr. at 527).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined that during the relevant period Hayes had the RFC to perform a limited range of sedentary work. (Tr. at 528). At the fourth step, the ALJ determined that during the relevant period Hayes could not perform his past relevant work as electronic equipment repairer, auto mechanic, or auto service manager. (*Id.* at 532). If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work

experience.  20 C.F.R. § 404.1520(a)(4)(v) and (g)(1).  If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled.  *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Hayes's age, education, work experience, and RFC, the ALJ determined that during the relevant period there were jobs existing in significant numbers in the national economy, such as those of telemarketer, information desk clerk, and document preparer, that Hayes could perform.  (Tr. at 533).  Therefore, the ALJ concluded Hayes was not disabled during the relevant period.  (*Id.* at 534).

## III.    Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec. Admin.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.  *Ingram*, 496 F.3d at 1260; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the

decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   Discussion

On appeal, Hayes argues (1) the ALJ failed to comply with Judge Proctor's remand order; (2) the ALJ improperly discredited his testimony regarding his pain; (3) the ALJ improperly rejected the opinions of Darius Ghazi, M.D., who the ALJ called to testify regarding Hayes's impairments and functional limitations at the second hearing, and Eugene Mangieri, M.D., who began treating Hayes for pain on September 8, 2016; and (4) the ALJ failed to develop the record fully and fairly.

(Docs. 13, 15).

### A.    Compliance With Remand Order

As stated, Judge Proctor concluded the ALJ did not apply the Eleventh Circuit "pain standard" correctly in her first decision.  More specifically, Judge Proctor concluded the ALJ failed to articulate explicit and adequate reasons for discrediting Hayes's testimony regarding his pain. (Tr. at 604-16).  In discussing the error, Judge Proctor quoted from an Eleventh Circuit opinion stating that, if an ALJ fails to articulate explicit and adequate reasons for discrediting a claimant's testimony regarding his pain, the testimony must be " 'accepted as true.'" (*Id.* at 615 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Hayes construes Judge Proctor's quotation of the "accepted as true" language as directing the ALJ on remand to accept his testimony regarding his pain as true, and he asserts the ALJ failed to comply with the direction because she again discredited the testimony.  He asserts the law-of-the-case doctrine and the mandate rule required the ALJ to comply with Judge Proctor's direction.[4]

The court disagrees with Hayes's construction of Judge Proctor's opinion. Judge Proctor did quote the "accepted as true" language, but ultimately he remanded

---

[4] The law-of-the-case doctrine precludes a court from revisiting an issue that has been decided already.  *Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018).  The mandate rule is simply a "specific application" of the law-of-the-case doctrine. *Id.* (internal quotation marks omitted).  It requires that, when a lower court is acting under a higher court's mandate, it must implement the mandate without examination or variance.  *Id.*

the case for further proceedings consistent with his opinion. The court construes Judge Proctor's opinion and order as directing the ALJ to scrutinize the record anew and, to the extent she chose not to credit Hayes's testimony regarding his pain, articulate explicit and adequate reasons for that decision.

The source of the "accepted as true" language is the Eleventh Circuit's decision in *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986). In *MacGregor*, the Eleventh Circuit held the Appeals Council had accepted a claimant's testimony regarding his pain as true by failing to articulate explicit and adequate reasons for rejecting the testimony and remanded the case with an instruction that the claimant be awarded disability benefits. 786 F.2d at 1054-55. However, the Eleventh Circuit has retreated from *MacGregor* since *Holt*. The prior precedent rule binds a court to the holding of the first panel to address an issue of law, unless and until it is overruled by the Eleventh Circuit sitting *en banc* or the United States Supreme Court. *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000). In other words, a court must follow the earlier of two conflicting panel decisions. *Id.* Eleventh Circuit panel decisions preceding *MacGregor* determined the appropriate remedy for an ALJ's inadequate credibility determination was not remand with an instruction a claimant's testimony or a medical provider's opinion be accepted as true and/or an award of disability benefits be made but, rather, remand for reconsideration of the testimony or opinion. *See, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1390-92 (11th Cir.

1982); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).  Relying on the prior precedent rule, the Eleventh Circuit has followed *Wiggins* and *Owens* since *MacGregor* and *Holt*.  *See, e.g., Lawton v. Comm'r of Soc. Sec. Admin.*, 431 F. App'x 830, 835 (11th Cir. 2011) (citing *Owens* and *Wiggins*); *Davis v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 828, 833 n.1 (11th Cir. 2011) (citing *Wiggins*). District courts within the Eleventh Judicial Circuit have done the same.  *See, e.g., Carpenter v. Astrue*, 2011 WL 767652, at *5-6 (M.D. Fla. Feb. 25, 2011); *Iheanacho v. Berryhill*, 2018 WL 4680173, at *2 (N.D. Ala. Sept. 28, 2018); *Racine G. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 9772298, at *2 n.3 (N.D. Ga. Feb. 12, 2021).

### B.    Pain Testimony

A claimant may establish disability through testimony of pain or other subjective symptoms.  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  To do so, he must satisfy the three-part "pain standard" by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain or other subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or other subjective symptoms.  *Id.*; *Whitmore v. Comm'r of Soc. Sec. Admin.*, 855 F. App'x 641, 643 (11th Cir. 2021); *see also* 20 C.F.R. § 404.1529 (containing substantially similar language); SSR 16-3p (same).

An ALJ may discredit a claimant's testimony regarding his pain provided she clearly articulates explicit and adequate reasons for doing so. *Brown*, 921 F.2d at 1236; *Whitmore*, 855 F. App'x at 643. In evaluating a claimant's testimony regarding the intensity, persistence, and limiting effects of his pain, an ALJ considers all available evidence. 20 C.F.R. § 404.1529(c); SSR 16-3p; *Hollingsworth v. Comm'r of Soc. Sec. Admin.*, 846 F. App'x 749, 752 (11th Cir. 2021).

Hayes testified he experiences disabling pain attributable to injuries sustained during the tornado that struck Tuscaloosa, Alabama, on April 27, 2011. (*See, e.g.,* Tr. at 645-61). The ALJ determined Hayes's medically determinable impairments could reasonably be expected to have caused him pain during the relevant period but that Hayes's testimony concerning the intensity, persistence, and limiting effects of his pain was not entirely consistent with the medical and other evidence of record. (*Id.* at 529). On remand from this district court, the ALJ articulated multiple reasons for discrediting Hayes's testimony, including that the testimony was not consistent with (1) the results of imaging performed at the hospital where Hayes was taken immediately following the tornado, (2) records of the physician who treated Hayes during the relevant period, and (3) the conservative nature of the treatment Hayes received. (*Id.* at 529-30).[5] Together, these were appropriate grounds for discrediting

---

[5] The ALJ identified records of Hayes's treatment by Dr. Mangieri as additional evidence supporting her decision to discredit Hayes's testimony regarding his pain. (*Id.* at 529-30). As stated, Dr. Mangieri began treating Hayes for pain on September 8, 2016. (*Id.* at 296). Because

Hayes's testimony regarding his pain.  *See* 20 C.F.R. § 404.1529(c) (identifying

evidence appropriate for consideration when evaluating claimant's symptoms); SSR

16-3p (same); *May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir.

2007) (holding ALJ properly discredited plaintiff's subjective symptoms testimony

where that testimony was not supported by clinical findings or consistent with

objective medical evidence or reported daily activities); *Brown v. Comm'r of Soc.

Sec. Admin.*, 680 F. App'x 822, 826 (11th Cir. 2017) (holding ALJ properly

discredited claimant's subjective symptoms testimony where that testimony was

inconsistent with mostly normal findings by claimant's treating providers,

claimant's reports to those providers, and conservative nature of recommended

treatment); *Doig v. Colvin*, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014)

("The meaning of 'conservative treatment' is well known; it includes any mode of

treatment which is short of surgery.  Treatment with medication, whether prescribed

or over-the-counter, and steroid injections is still conservative treatment, i.e., not

surgery.").  Moreover, the evidence discussed below, which the ALJ cited in support

of her determination to discredit the testimony, is substantial.

Imaging of Hayes's spine performed at DCH Regional Medical Center

("DCH") in Tuscaloosa on April 28, 2011, showed non-displaced left transverse

---

Dr. Mangieri did not begin treating Hayes until approximately eight months after Hayes's date last insured, December 31, 2015, the court views Dr. Mangieri's records as having minimal bearing on an evaluation of the pain Hayes experienced during the relevant period.

process fractures at the L1 and L2 levels and mild superior endplate fracturing of the L3 vertebral body without alteration in alignment or effect on the spinal canal. (Tr. at 255-57). Imaging of his right knee performed at DCH on the same day showed a Grade I or Grade II tear of the medial collateral ligament. (*Id.* at 246, 252). A Grade I MCL tear is a mild tear, and a Grade II MCL tear is a moderate tear.[6] Hayes's medical providers at DCH treated his injuries with a back brace and a knee brace. (*Id.* at 245).

Apart from the records of treatment Hayes received at DCH immediately following the tornado, the only other medical records from the relevant period are those of David Harding, M.D. Hayes told Dr. Harding on May 10, 2011, that he was still experiencing "some" back and knee pain after sustaining injuries during the tornado but only when walking. (*Id.* at 408). Dr. Harding's records indicate Hayes's pain improved after Dr. Harding prescribed a higher dose of Lortab on November 3, 2011.[7] They do not include any more complaints of back or knee pain until April 9, 2013. (*Id.* at 402-06). On that date, Hayes reported Lortab was not working as well as it once had, and Dr. Hayes began prescribing Tylox or Percocet instead. (*Id.* at

---

[6] *See* https://my.clevelandclinic.org/health/diseases/21979-mcl-tear (last accessed March 6, 2024).

[7] Lortab is a brand name version of the drug made by combining hydrocodone and acetaminophen. *See* https://www.mayoclinic.org/drugs-supplements/hydrocodone-and-acetaminophen-oral-route/description/drg-20074089 (last accessed March 6, 2024).

401).[8]   Hayes remained on that medication regimen, with minor adjustments to dosage, through the end of the relevant period, with few complaints of pain.  (*Id.* at 389-400).[9]   Dr. Harding did not document any objective findings with respect to Hayes's spine during the relevant period and noted specifically in each treatment record that there was no evidence of edema or a decreased range of motion in Hayes's extremities.  (*Id.* at 389-408).

The imaging of Hayes's spine and right knee showing mild-to-moderate injuries, his conservative treatment with braces and prescription medication, the overall effectiveness of that treatment during the relevant period, and the absence of objective findings in Dr. Harding's records consistent with a disabling level of pain together constitute substantial evidence supporting the ALJ's decision to discredit Hayes's testimony regarding his pain.  Insofar as Hayes asserts there is other evidence that supports his allegations regarding disabling pain, the court emphasizes the relevant question is not whether evidence supports Hayes's allegations but

---

[8] Tylox and Percocet are brand name versions of the drug made by combining oxycodone and acetaminophen.          *See*          https://www.mayoclinic.org/drugs-supplements/oxycodone-and-acetaminophen-oral-route/description/drg-20074000 (last accessed March 6, 2024).

[9] As stated, Dr. Mangieri began treating Hayes for pain on September 8, 2016.  Dr. Mangieri noted Hayes's treatment by Dr. Harding had resulted in "suboptimal" pain relief.  (*Id.* at 296).  However, "suboptimal" simply means less than the best possible, *see* https://www.merriam-webster.com/dictionary/suboptimal (last accessed March 6, 2024), as opposed to poor or ineffective, and the fact remains that Dr. Harding's records document relatively few complaint of pain made by Hayes.  Therefore, Dr. Mangieri's note does not call into doubt the conclusions drawn from Dr. Harding's records by the ALJ and this court.

whether substantial evidence supports the ALJ's determination.  *See Moore*, 405 F.3d at 1213 (discussing "narrowly circumscribed" nature of appellate review); *Henry v. Comm'r of Soc. Sec. Admin.*, 802 F.3d 1264, 1268 (11th Cir. 2015) ("[W]e review the ALJ's decision for substantial evidence, but neither make credibility determinations of our own nor re-weigh the evidence.").   "[C]redibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  Here, the ALJ clearly articulated explicit and adequate reasons for discrediting Hayes's testimony regarding his pain, and those reasons are supported by substantial evidence.

## C.    Evaluation of Medical Opinions[10]

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§

---

[10] New regulations for evaluating medical opinions apply to DIB applications filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  The new regulations do not apply here because Hayes filed his application for DIB benefits on February 21, 2017.  (Tr. at 581).

404.1527(a)(2), 416.927(a)(2)).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  " 'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). "Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some other rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

"The ALJ may consider many factors when weighing medical evidence, including the claimant's relationship with the examining or treating physician, whether a medical opinion is well supported, whether a medical opinion is consistent with the claimant's records, and a doctor's specialization." *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 439 (11th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(c) (identifying factors relevant to assigning weight to medical opinions), 416.927(c) (same).  "An ALJ may reject any medical opinion if the evidence supports a contrary finding." *Arnold v. Comm'r of Soc. Sec. Admin.*, 724 F. App'x 772, 779 (11th Cir. 2018) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

However, "[a]bsent 'good cause,' an AJL is to give the medical opinions of treating physicians 'substantial or considerable weight.'"  *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).  "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so."  *Id.* at 1179 (quoting *Phillips*, 357 F.3d at 1240-41).

### 1.    Dr. Ghazi's Opinions

Dr. Ghazi testified during the second hearing before the ALJ that he believed Hayes had an impairment or combination of impairments that equaled Listing 1.15. (Tr. at 549).  He further testified he believed Hayes's "capacity for difficult work [was] significantly diminished" but that he had "some functional capacity" and could "work up to his physical limitations."  (*Id.* at 550-51).  In relation to Hayes's capacity for work, the ALJ interpreted Dr. Ghazi as testifying initially that Hayes could not work at all and then conceding Hayes could work part-time.  (*Id.* at 530).  The ALJ assigned no weight to Dr. Ghazi's opinions – both the opinion Hayes had an impairment or combination of impairments that equaled Listing 1.15 and the opinion

17

regarding Hayes's capacity for work as the ALJ understood it. (*Id.* at 530-31).[11] This was not error. Because Dr. Ghazi did not treat Hayes, his opinions were not entitled to deference. *See Himes v. Comm'r of Soc. Sec. Admin.*, 585 F. App'x 758, 762, 765 (11th Cir. 2014) (articulating hierarchy of medical opinions). As grounds for her rejection of the opinions, the ALJ reasoned the record either lacked objective findings that would support the opinions or included objective findings that contradicted the opinions. (Tr. at 531). These were appropriate grounds for rejecting the opinions, *see Sryock*, 764 F.2d at 835 ("The law is clear that . . . the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."), and they are supported by substantial evidence. Dr. Harding's records from the relevant period, which are the only medical records from the relevant period apart from the DCH records immediately following the tornado, do not include objective findings that would support the conclusion he had an impairment or combination of impairments that equaled Listing 1.15, could not work at all, or could work only part-time. (Tr. 389-408).[12]    Moreover, as stated, Dr. Harding

---

[11] As the court understands it, Dr. Ghazi's opinion regarding Hayes's capacity for work is, if anything, consistent with the ALJ's determination that during the relevant period Hayes had the residual functional capacity to perform a limited range of sedentary work. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (holding that, although ALJ misconstrued psychologists' findings, the misconstruction was harmless because the psychologists' findings did not contradict ALJ's conclusion claimant did not have severe impairment).

[12] "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the

affirmatively noted there was no evidence of edema or a decreased range of motion in Hayes's extremities.  (*Id.* at 389-408).[13]

### 2.   Dr. Mangieri's Opinions

Dr. Mangieri completed a questionnaire titled "Statement of Treating Physician" on October 15, 2018.  (Tr. at 347-50).  In response to questions posed on the questionnaire, Dr. Mangieri indicated Hayes suffers from severe and continuous pain, severe depression, panic attacks, and significant functional limitations.  (*Id.* at 347-50).  The ALJ assigned "extremely limited weight" to the opinions Dr. Mangieri expressed on the questionnaire.  (*Id.* at 531).  As grounds for discrediting the

---

duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  *Id.* (quoting 20 C.F.R. § 404.1526(a)).  To meet Listing 1.15, a claimant must demonstrate a disorder of the skeletal spine resulting in compromise of a nerve root and provide evidence of, *inter alia*, radicular distribution of pain, paresthesia, or muscle fatigue; and radicular distribution of neurological signs evidenced by muscle weakness, signs of nerve root irritation, tension or compression, and either sensory changes or decreased deep tendon reflexes.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15.  Dr. Harding's records from the relevant period include only one documented complaint of leg numbness (i.e., paresthesia) secondary to back pain, on July 9, 2013.  (Tr. at 399).

[13] The ALJ offered two additional reasons for rejecting Dr. Ghazi's opinions: that the opinions were inconsistent with Dr. Mangieri's records indicating Hayes's pain had improved markedly by October 2016, and that the opinions were inconsistent with the fact that Hayes had returned to work for a five-month period beginning in May 2022.  (*Id.* at 527-28, 530-31; *see also id.* at 556-57).  Neither Hayes's improvement after beginning treatment with Dr. Mangieri in September 2016, nor his temporary return to work in May 2022, necessarily speaks to Hayes's capacity for work during the relevant period beginning April 27, 2011, and ending December 31, 2015.  Therefore, neither the improvement nor the temporary return to work are additional grounds on which the ALJ could have rejected Dr. Ghazi's opinions.  However, this does not affect the conclusion the ALJ properly rejected Dr. Ghazi's opinions.  *See D'Andrea*, 389 F. App'x at 948 (finding no error in evaluation of medical opinion where ALJ "articulated at least one specific reason for disregarding the opinion and the record support[ed] it").

opinions, the ALJ cited the format in which the opinions were expressed, noting there was limited room for explanation, and that the opinions were not supported by Dr. Mangieri's own treatment records.  (*Id.* at 530).

The fact that a medical provider's opinions are expressed in a format with limited space for explanation is not, in and of itself, a basis to discount the opinions. *Schink v. Comm's of Soc. Sec. Admin.*, 935 F.3d 1245, 1262 (11th Cir. 2019).  An ALJ should consider a provider's records as the basis for opinions expressed on, for example, a "check-the-box" questionnaire.  *Id.*  The ALJ did just that here.  She assessed the opinions Dr. Mangieri expressed on the questionnaire based not only on the format in which the opinions were expressed but also on Dr. Mangieri's own treatment records.  In doing so, she articulated good cause for discounting Dr. Mangieri's opinions.  *Flowers v. Comm'r of Soc. Sec. Admin.*, 441 F. App'x 735, 741-43 (11th Cir. 2011) (holding ALJ did not err in discounting opinions of treating and examining physicians because those opinions were not supported by the physicians' own clinical findings).  Moreover, her  determination Dr. Mangieri's own treatment records did not support the opinions he expressed on the "Statement of Treating Physician" questionnaire is supported by substantial evidence.  As stated, Dr. Mangieri began treating Hayes for pain on September 8, 2016, and noted merely that Hayes's treatment by Dr. Harding had resulted in "suboptimal" pain relief.  (Tr. at 296).  He substituted methadone for the Percocet that had been prescribed by Dr.

Harding and increased the dosage of Lexapro on which Dr. Harding had started Hayes. (*Id.*). Dr. Mangieri noted on September 20, 2016, that Hayes had experienced an excellent response to methadone. (*Id.* at 294). He noted on October 19, 2016, that methadone had been very effective in controlling Hayes's pain and Hayes had shown marked improvement. (*Id.* at 292). Hayes reported during that visit that "life [had] been better [that] month than in a long time." (*Id.* at 292). Dr. Mangieri noted on April 5, 2017, that Hayes reported having "the best month . . . in a long time." (*Id.* at 474). By August 23, 2017, Hayes had loss 100 pounds as the consequence of pain relief that allowed increased activity. (*Id.* at 461). On October 18, 2017, Dr. Mangieri noted Hayes continued to lose weight and his depression had improved. (*Id.* at 455). Hayes intermittently reported increased pain to Dr. Mangieri, which Dr. Mangieri addressed by adjusting Hayes's methadone dosage, but overall Dr. Mangieri's records suggest a success story. At the very least, they lack findings that would support his opinions Hayes suffers from severe and continuous pain, severe depression, panic attacks, and significant functional limitations or, as is the more relevant question, suffered from those impairments and limitations between April 27, 2011, and December 31, 2015.

### D.    Development of Record

Hayes argues that, having rejected the opinions of Drs. Ghazi and Mangieri, the ALJ was left with insufficient evidence to determine Hayes's limitations. The

21

court disagrees.  It is well settled an ALJ presiding over a Social Security disability hearing has a duty to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  That duty obligates an ALJ to recontact a medical source when the evidence received from the source is inadequate to determine whether a claimant is disabled, *see* 20 C.F.R. § 404.1512(e); *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008), and to order a consultative examination when the evidence overall is insufficient to make a determination regarding a claim, *see* 20 C.F.R. § 404.1519a(b); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).  However, the evidence here was sufficient to determine Hayes was capable of performing a limited range of sedentary work during the relevant period.  The records created by Hayes's treating providers were not unclear or incomplete.  They simply did not show Hayes was disabled during the relevant period.  There is a difference between the record containing insufficient evidence and the record containing sufficient evidence from which to determine there is not evidence of disability.

Hayes argues the circumstances of his case are the same as those that required reversal and remand in *Spencer v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4449329 (N.D. Ala. Sept. 23, 2022).  However, several facts distinguish this case from *Spencer*.  *Spencer* involved a claimant who alleged disability resulting from autism spectrum disorder.  *Spencer*, 2022 WL 4449329, at *1.  A state agency medical

consultant attempted to evaluate the claimant's claims but concluded the file contained insufficient evidence to make a determination regarding disability and that a consultative examination would be needed to complete the review. *Id.* at \*3. The ALJ obtained a consultative psychological examination but rejected the opinions expressed by the examiner. *Id.* at \*4. The undersigned magistrate judge held first that the ALJ failed to explain the rejection adequately and second that, without the consultative psychological examination which the state agency medical consultant stated was necessary, the ALJ was left with insufficient evidence to determine the claimant's mental limitations. *Id.* at \*4-5. The undersigned instructed that on remand the ALJ should re-evaluate the consulting psychological examiner's opinions and, if the ALJ again found that the opinions were unpersuasive or did not address the claimant's functional limitations in full, order another consultative psychological examination. *Id.* at \*6. The undersigned noted that acquiring opinion evidence is particularly important where a claimant alleges disability based on a mental health disorder because " 'mental impairments are not susceptible to certain diagnostic tools used to evaluate physical impairments'" and there is " 'difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace.'" *Id.* at \*5 (quoting *Telesco v. Comm'r of Soc. Sec. Admin.*, 577 F. Supp. 3d 336, 354 (S.D.N.Y. 2021), *report and recommendation adopted*, 2022 WL 719271 (S.D.N.Y. Mar. 10, 2022)); *see also Barber v. Barnhart*, 459 F. Supp.

2d 1168, 1173 (N.D. Ala. 2006) ("In cases involving mental illness, the opinions of mental health professionals are especially important.").

Hayes alleged disability based primarily on physical, not mental, impairments.  The state agency medical examiners did not indicate a consultative examination was necessary to evaluate Hayes's claim.[14]  The ALJ properly rejected the opinions of Drs. Ghazi and Mangieri.  Finally, the record contained sufficient evidence without the opinions of Drs. Ghazi and Mangieri for the ALJ to conclude Hayes was capable of performing a limited range of sedentary work during the relevant period.  *See, e.g., Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) (holding consultative examination was not necessary after concluding other evidence sufficiently supported ALJ's RFC finding); *Green v. Comm'r of Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (holding record contained substantial evidence to support ALJ's RFC determination after ALJ discredited opinions of claimant's primary care physician).

## V.    Conclusion

Having reviewed the administrative record and considered all the arguments

---

[14] The ALJ noted the state agency medical consultants determined they could not offer an opinion as to Hayes's alleged disability because the record did not contain sufficient evidence.  (Tr. at 530). Hayes does not challenge the ALJ's finding regarding the state agency medical consultants' determination.  (Doc. 13 at 11 n.3).  Notwithstanding the finding, the fact remains that the state agency medical consultants did not determine a consultative examination was necessary to evaluate Hayes's claim.  That fact distinguishes this case from *Spencer*.

presented by the parties, the court finds the Commissioner's decision is due to be

**AFFIRMED**.  A separate order will be entered.

      **DONE** this 6th day of March, 2024.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE